Good morning. I am Mary Lehman. I represent Plaintiff Appellant Les Kimmerer. I'd like to reserve five minutes for my rebuttal time. Here the District Court made a mistake in granting summary judgment on the sole basis Kimmerer's idea that Starwood agreed to purchase was not novel. I think the place to start and this is the reason and the wonderful role of appellate courts and appellate counsel is a legal issue. The legal issue is novelty required in order to enforce a contract to purchase an idea under Nevada law. It cannot be disputed there are two lines of cases in the United States. There's the New York line that says that in contracts to purchase ideas novelty is required. There's another line of cases stemming from California that novelty is not a requirement to enforce a contract to purchase an idea. Now the question is everybody agrees Nevada law applies, what would Nevada do? There's only one case, one published case in Nevada that deals with enforcing a contract to purchase an idea and that's Recreon v. Beth. If you look at Recreon, it says, it does not say that novelty is an element necessary to enforce a contract to purchase an idea. In fact, looking at the case carefully, the answer is that it says the opposite, that it is not required. And something that escaped my attention earlier in the Recreon case is that if you look at the decision, the paragraphs in the decision are actually numbered to discuss which cause of action that the plaintiff raised. Paragraph number one talks about the cause of action to enforce a contract. In paragraph number one there's absolutely no mention of novelty or concreteness for that matter. Indeed paragraph number one cites Desney v. Wilder, the California Supreme Court case, which is the definitive statement and reasoning that novelty is not required. Paragraph two, which talks about copyright, in that paragraph they talk about novelty and concreteness. And in every jurisdiction novelty and concreteness is required for copyright claims. So the question is what would Nevada do? The only Nevada state case on this point says that Nevada follows California law that novelty is not required. Can I ask a question about the whole legal situation? Why is this, isn't this ultimately a contract interpretation question? I understand that it's been viewed largely as a consideration problem. But aside from it being a consideration problem, it's also a contract interpretation question, is it not? What did the parties mean when they said that it would pay for an idea? What did the parties mean when I'm sorry, I didn't hear you. What did the parties mean when they said that they would pay, assuming that there was in fact a statement made that it would pay for an idea? Isn't there a contract interpretation issue here as well? I don't know in this case. This case is kind of unique in the sense that at this procedural posture, Starwood has conceded that there was an agreement. Yes, but what was the agreement? The agreement that Starwood has conceded is that if Kemmerer disclosed his idea that Starwood would pay 1% of the transaction price if Starwood used the idea. And that was the only term, if Starwood used the idea. Counsel, there's a lot of evidence in this record that Starwood and Sheraton had had prior conversations about the possible acquisition. This was nothing new to the Sheraton people. What do you do with that? Well, my first and I think the easiest point, and I think the correct point to start is that novelty is not a requirement. So we don't have to get into all that messy stuff. And I don't think that can be disputed under the law. That's not the point that I'm making, Counsel. I'm making the point that this was not a new idea to the Sheraton. This man was bringing nothing new to the table. The case is that saying novelty is not a requirement, and indeed the law reviews and nimmer on copyrights, which is we cite in our brief, which is an excellent discussion of the rationale, specifically say that bringing something new to the table is not necessary or even desirable in enforcing contracts to purchase ideas. There's an example of there's a purse full of money lying on the side of the road. And it's not new. It's been lying there. And then someone picks it up. And indeed you're paying or the contract is for the service of picking it up or presenting it. I mean, what is new, you know, in our world? Well, Counsel, I think the point is that they did not use your client's idea. They had already embarked on this process. They did not use your client's idea. How is it a valid consideration, Counsel, for one to pay for an idea that has already been discussed with the Sheraton? Consideration is an element of a contract. And the courts continually do not weigh consideration as we all know if peppercorn is sufficient. An idea, by the very notion that it's an idea, implies that it has value. And bringing this idea to Starwood's attention, you know, in a situation where Starwood conceded, I mean, their very response was, it'll never work. Well, the idea was, well, yes, it will. And let me show you how. So, even assuming that novelty is a requirement or, you know, or using the idea, the record here at a minimum is a question of fact, whether indeed the idea that Cameron presented to Starwood had value, which all it needs is the peppercorn, and whether indeed it was used. The evidence, if you look at it, okay, big picture, okay? Starwood says, well, we already knew this. This was our idea. What do they have? What did they present in their summary judgment paper? There's absolutely nothing in writing to show that this monumental idea or undertaking, something that was indeed a named transaction of the year, that they were thinking about. There's no e-mails. There's no memo. There's nothing documenting that there was a financial analysis prior to the meeting between Cameron and Starwood on May 7th. The only, only evidence that Starwood presented was that, well, Starwood's representative, Sternlich, had discussed with ITT's CEO, Bowman, this idea prior to May 7th. And, you know, that was the evidence. But what was the actual evidence in the record? The evidence is that there were perhaps one or perhaps two phone calls. But Bowman specifically stated nothing was discussed in particular. The only thing that Starwood says was, hey, you know, look at us, consider us. Well, everybody in the hotel industry had called ITT. But your client didn't give much more. I mean, your client didn't know anybody, apparently. He didn't have any particular information to convey about what was likely to happen or not happen. He essentially said the same thing that had been heard before. And I know you're making, trying to suggest that the large difference was the difference between acquisition and merger. But that doesn't seem something that would, in the business world, be something that is simply floating around in the air. So what did your client bring that hadn't been said before, that hadn't been thought of, that wouldn't have been thought of just because of what was going on in the industry? Okay, absolutely, acquisition versus merger. I mean, this was, as the press said, the minnow swallowing the whale. This is what got transaction of the year. It is undisputed in Bowman's testimony there was no mention of an acquisition. It was a general, to the extent they had any discussions, it was generally about combining the companies. Acquiring versus merging is a huge difference, especially in a transaction. Acquiring is not combining the companies? Or combining the companies is a general sense. And in the general world, if you talked about combining two companies, a large company and a small company, you would, the general business world would assume that the large company would acquire the smaller one. So that's the novelty. And in fact, Sterlick's undisputed response is that, well, I doubt it won't be successful. I mean, that is almost an admission of how novel it was. It's like flying to the moon. But it's not that. It's that there was no discussion of acquisition versus merger, and they are important differences. And there is nothing in the record that says that they indeed discussed an acquisition of the smaller, of the bigger company by the minnow. Aside from that, there was Kimmerer's presentation, an idea of spinning off the gaming properties. It is undisputed that prior to the meeting with Kimmerer, Sterlick, to the extent he thought about it at all, he didn't know what to do about the gaming company. The agreement of the defendant for purposes of summary judgment as to the contract includes that, that representation. In other words, my understanding is that the representation that the defendant is conceding for purposes of summary judgment is that they agreed to pay for an idea. But are they agreeing that this representation with regard to spinning off the gaming properties was ever made, or is that in dispute? I don't think it's in dispute because it's in the letters that Mr. Kimmerer I understand that they dispute that they ever received the letters. Some of the letters. Not this one? I don't recall it being in dispute at all. But the point is, is that, you know, if you're going to talk about the value of an idea, you know, it depends on how you characterize it. I understand it, but I'm trying to find out exactly what idea we have before us that isn't in dispute. That isn't in dispute? What idea is not subject to a factual dispute? Well, I mean, I think that's the point. And excuse me if I'm seeing it now, but that was your original question, I guess, is that is what is the idea is a factual question. And so can you decide this on summary judgment? Right. That's my question. Mm-hmm. So, okay. I don't want to lose focus on that novelty is not required. Okay. That if we can say, well, what was the contract? You know, what was there any value of this? Well, if parties want to protect themselves to make sure that what they're agreeing to you know, if it is valuable to me, I'll pay you, you know, a fixed sum amount or if I end up using it and I make a profit, I'll make you a percentage of that. I mean, this is the absolute freedom of contract that our law recognizes and California recognizes. And to say in retrospect, well, it turned out that this idea perhaps wasn't as valuable as they thought, well, then that's something that the parties can protect themselves at the front end for contracting. But in this case, the contract is conceded for purposes of summary judgment. Counsel, did your client package his idea to make it valuable? Was it just the thought of merger or joining together? Well, I think the package. An idea, you have to be careful because now we're just, we got to be careful not to go down this road of weighing the consideration of saying how valuable was it? Was it packaged? Was it concrete? Was it a raw idea? I mean, the cases are very clear. You can't go down that road because that just, you know, is the post hoc second guessing of the parties, the value of the party's contract. In our case, it wasn't just the, you know, acquire this, which in itself is novel and of value because it was so different at the time. We also had the package included merging, excuse me, spinning off the gaming properties to help fund the transaction, which the record undisputedly showed that, you know, Starwood didn't have all the cash to compete with Hilton. And then part of the package included the stated value of what Kimmerer believed the ITT's stock was. At the time, Hilton had offered $55. Kimmerer says, you know, it's worth at least $80. As it turned out, when Starwood did make their offer, they offered between $78 and $82, and indeed the deal did close at $85. And, you know, there's a huge difference, you know, back in May saying, well, $55 is low, go to $80. I mean, that's a huge difference. That, you know, shows the novelty and the value of the, quote, unquote, idea that Kimmerer presented and contracted to sell to Starwood. So no further questions. I'll reserve my time. Thank you very much. Counsel? Good morning, ladies and gentlemen. My name is Stephen Peek, Hale Lane Peek Dentist at Howard Counsel for Starwood Hotels and Resorts Worldwide, Inc. And this is, as we know, an appeal from a grant of a summary judgment based upon the depositions, transcripts, the documents submitted, the documents considered, and all the pleas considered by the Court. And what do we know from that record below, upon which Judge Dawson concluded that there were no genuine issues of material fact? What we do know is that in the January and February, actually January through April period of time, once there had been an announcement by Hilton of a hostile takeover of ITT Sheraton, Barry Sternlich, Chairman and CEO of Starwood Hotels and Madison Gross, his general counsel, had the following contacts with ITT Sheraton. Barry Sternlich called up Bob Bowman on at least one, if not more, occasions, met with him from the record below, undisputed, met with him in that same time frame, and during those discussions, either telephonically or in person, talked about a combination of the two companies. And I'm not going to split the fine hairs, as Ms. Lehman does, over merger versus acquisition. They were talking about Starwood Hotels to defeat the hostile takeover of Hilton. So there's no question but that Starwood Hotels in this period of time, from January through April, was, had conceived and was pursuing the idea of a combination of the companies of ITT Sheraton and Starwood. What we also know from the record below is that Madison Gross, general counsel for Starwood, had a conversation with Ann Reese, the chief financial officer of ITT Sheraton, to again discuss the type of business that Starwood Hotels was. It was a real estate investment trust and how that might impact a combination of the two companies. What we do know from the record below that where Ms. Lehman points to these one-minute phone conversations, there are two conversations we know, one that took place over 79 minutes and one that took place over 7 minutes. So let's not focus on just those so-called one-minute conversations. That's just from one end. We don't know what the other end was. So we do know that there were lengthy conversations between the parties in this period of time, upon which Judge Dawson determined that there was no genuine issue of material fact. And those we know that these discussions did not bear fruit. That's because of the actions of ITT Sheraton and its board to pursue, as it called itself, an independent course of action that, as of at least April, ITT Sheraton was attempting to defeat the hostile takeover, was going to remain independent and pursue that independent course of action. Kagan. Sir, are you going to address the fundamental underlying legal question? Yes, I am going to address the legal question. Okay. I apologize. We then get to that meeting of May of 1997 and what that meeting was and what the contract was, if any, that was formed and whether there was Nevada law is on those. What we do know is that there was, from the record below, a discussion in which Mr. Kemmerer said what is the — I apologize, Your Honor. I'm trying to answer your question. I apologize. I don't mean to frustrate you. There was a contract discussed which was if I bring you an idea, will you pay me 1 percent for that idea? And the answer was, we know from at least assuming all those facts most favorable, an answer was yes. And then what was that idea? Whether that idea is something under Nevada law that is enforceable and is something upon which there can be contract formation upon which we know what the contract was. Ms. Lehman says that Nevada law is, under Smith v. Recreon, a case that did not address the issue of implied in fact or expressed contract. And I don't disagree with her, because in the Smith v. Recreon case, the Court said that the idea that was brought to Alan Sachs at the Stardust Hotel was something that was volunteered and upon which Mr. Sachs did not say I will pay you something for. So there was no expressed or implied contract. And then the Court went on to talk about whether or not Mr. Smith was owed any monies at all for the idea of the recreational vehicle park adjacent to the Stardust Hotel in Las Vegas. And the Court concluded, based upon other theories, that there was not. Talked about novelty and talked about concreteness. Then what we do know is that we have a case decided by that now senior judge, Ed Reed, but who had already been on the bench for some time, called Bergman v. Electrolux. And that case, interestingly enough, is only dismissed by Ms. Lehman as, well, Judge Reed got it wrong. Judge Reed, who said that in the Bergman v. Electrolux case that novelty and concreteness are important for the formation of a contract, she says, well, Judge Reed got it wrong. Well, I submit to Your Honors that Judge Reed, sitting as a, if you will, under Erie, a Nevada judge or applying Nevada law, did not get it wrong. Judge Reed said, and I'm quoting from his decision at 558 Fed Sup, he says that Nevada does not agree with the California line of authority. But we can read Smith v. Recreon as well as Judge Bergman can. I'm sorry? We can read Smith v. Recreon as well as the District Court can. So it's not particularly helpful to tell us what a District Court, how the District Court read the Nevada Supreme Court. So, and assuming that we don't agree with the way he read Smith v. Recreon, because as you just agreed, it doesn't really say that, where do we go next? Well, I think that the Court itself got there as well. What was the contract? Did the District Court judge look and say, is there enough certainty, enough definitiveness to the so-called contract for me to be able to enforce it? What is your understanding of California law on this subject? Pardon? I have two questions. What is your understanding of California law and what is your understanding of whether Nevada would ordinarily follow California law? Well, I have, for the first answer, I do not disagree with Ms. Lehman. The California trend seems to be that a peppercorn is sufficient consideration for the exchange of an idea. Where I do disagree with Ms. Lehman is that Nevada would always follow and always look to California law, its sister state, in the adoption of its law. There are many cases, and I apologize to the Court that I haven't looked at that because I really thought this was resolved by Judge Reed's decision. But so I apologize because I know from my own personal experience, and that doesn't perhaps anecdotally get you anywhere, that Nevada does not always follow and does not always look to its sister state. In fact, when we look at even the Smith v. Recreon case, we see the citation to the New York cases. We don't see just the citation to the California cases. So we know that, at least in the Smith v. Recreon case, that Nevada was not looking just to California law for its decision in the Smith v. Recreon case. It looked to Illinois law, it looked to New York law, it looked to California law. There are many cases in Nevada that do not always look to California law. Certainly, as Ms. Lehman cited, impunity damages, where our statute is the same as theirs, that would make sense to look. In the decisions of constitutional, where the constitutional provisions are very similar to California, you would look to a jurisdiction where you have similar provisions, similar statutes, to also adopt and apply how your sister state or how judges applying similar provisions or exact provisions as impunity damages. So that certainly is not unusual, whether it be Nevada, Arizona, Texas, or anybody else, looking to some other jurisdictions that have a similar or have the same law. But Nevada does not always look to California law. So respectfully, I disagree with you. If you do, in terms of the question that I asked earlier, I understand that for purposes of summary judgment, you are not contesting the basic representation that your client agreed to pay for an idea. But what about the more detailed representations that are being made with regard to whether there were, whether the idea included acquisition versus merger, whether the idea included the price, whether the idea included spitting off the gambling facilities, are those in dispute or not in dispute? Portions of that are not in dispute. For example, what we have is a May 9th letter from Mr. Kemmerer. That is in the record. And in that May 9th letter, which I guess would be the closest time to the meeting, Mr. Kemmerer does write to Mr. Sternlich, not mentioning, of course, the so-called 1 percent transactional fee agreement, but he does say in the third paragraph of that for the acquisition of the ITT Corporation properties is for you, through any combination of your two existing hotel companies, to acquire the Sheraton Hotels. So there was at least discussion of acquisition. And for Las Vegas Industries, that was Mr. Kemmerer, to acquire the gaming properties. So at least on May 9th, what Mr. Kemmerer is saying, what was discussed in that meeting two days previously, was for him to acquire the gaming properties, he, Mr. Kemmerer, to acquire them in that so-called spinoff, as opposed to spun-off to Hilton or spun-off to Steve Wynn or spun-off to some other gaming entity within the Nevada community. So isn't the most straightforward way to resolve this case the way that Judge Fletcher suggested, i.e., was the idea used? What you're saying, in other words, let's forget the novelty problem for a while. It's a complicated one. And my view is, frankly, that there is no Nevada law in it and that the California law is that there doesn't have to be novelty and that that may be the better part of the legal analysis. But assuming all that, you would still have to use the idea. And you're saying they didn't use the idea about Las Vegas Industries and that essentially they didn't use the combination idea because they already had it, so they weren't using his idea. That is correct. And what about the notion about the price of the stock? Well, that's a hard one, I guess, if you're going to assume that the $80 is equating to the $78 offered and the $85 paid in some way. I'm sorry. So I understand that your client denies having gotten that letter? Yes. But I'm trying to take all inferences most favorable to the plaintiff. But if there's a dispute of fact as to whether that letter is received, then there's a material issue of fact in that question. So I say, all right. Okay. So that's a problem. Go ahead. The dispute of whether or not he got that letter, but the question of what was discussed, Mr. Kemmerer said that at that meeting in May at the Hard Rock Hotel, he did suggest to Mr. Sternlick $80 a share. Mm-hmm. Now, certainly, Mr. Sternlick contests what was discussed at that meeting. So I had to accept that, and the judge did accept that, because what we said was for purposes of summary judgment, there is no genuine issue of material fact, because you can take everything that Mr. Kemmerer said as true. There was no contract formation. The concept was not novel. The concept was not concrete. The idea was not used. And the idea was already in the minds of Mr. Sternlick and the company. And Ms. Lehman would have this Court adopt a line of thinking or would have the – believe that the California courts would adopt a line of thinking that says, if I come to you with an idea that you already have, and I say to you before I give you that idea that, will you pay me a fee for the idea that I give you, and you say yes to that, not knowing what you're saying, not knowing that to which you're agreeing, and then you agree and say, yes, I will pay you, and they give you an idea that you already have, she would have you believe that the California court would reach what I would say respectfully to her and to this Court, the absurd result that you'd have to pay a transactional fee for an idea you already have. That's what she is asking you to agree, asking you to adopt as a line of reasoning and as the law for this case. Barry Sternlick had the idea. Now, if Mr. Kemmerer had perhaps given something more concrete, if Mr. Kemmerer had had contacts at ITT Sheraton, Mr. Kemmerer had something more to discuss or more to pursue than the idea of a combination of the companies for acquisition and a spinoff of the gaming, yes. But interestingly enough, there's sort of a gloss over of the spinoff of the gaming companies. The spinoff of the gaming companies didn't occur at the time of the acquisition of ITT Sheraton. Ms. Lehman would have you believe that that occurred contemporaneously. It did not occur contemporaneously. It occurred over a series of — over a period of time, up to and including 19 — excuse me, 2000, some two-plus years later when Mr. Kemmerer filed a list on the Desert Inn Hotel when Mr. Wynn attempted to acquire it from Starwood, two-plus years later. That is not the idea that was supposedly pursued, supposedly presented. So respectfully, I think that that — Ms. Lehman's notion of what the law would be and the peppercorn would lead to an absurd result that you would have to pay a 1 percent transaction fee for an idea that you already had. But, of course, one problem with that is how is the person who gives you the idea supposed to know what idea you already had? They may have done a great deal of work to come up with this idea, and if you promised — so they — from their point of view, there's consideration, and if you promise to pay for it, they have no way of knowing what idea you already had. And I — Quite narrowly. I mean — I know. I know. But I think respectfully, I don't believe that even the California law that I read — and, frankly, I disagree with this Court about what Nevada would do, but that's because I'm a Nevada practitioner. I don't know what Nevada would do. Well, I think Judge Reed, who has been a Nevada practitioner and a Nevada judge for many, many years and is now still a sitting senior judge, knows what Nevada would do. And I think that's — That's a question. He read a Nevada case in a certain way that we can read as well. If he had said — I know he's a — If he had said what you're saying, i.e., I recognize that there is no Nevada law, but my prediction is that Nevada would say X, that would be one thing, but it's not what he said. You know, you are correct, Your Honor. I don't disagree with that, because he did say Nevada, however, does not agree, because it was in the context of a contract. In other words, as a Nevada lawyer, his — if he had understood the Nevada law, his I don't disagree with you. I mean, I'm — I'm certainly very respectful of Judge Reed, having known him for some 30-some-odd years and practiced in front of him, so I'm very respectful of him, so I'm not going to be one to be critical of him in any way. So I don't think he got it wrong, irrespective of whether he said it in a way that you would say, which is I'm going to predict that Nevada law would be this way. He just said Nevada does not agree. Counsel, was the district court's holding concerning novelty to the buyer necessary? Was that necessary? I don't really think it was necessary. I really don't, because I think that given what the court concluded about the genuine issue of material fact-reading, I don't think that it was necessary to that holding. I think that the fact that there already was an idea, the fact that there had already been discussions was, I think, probably more critical to the decision of Judge Dawson than was the idea of the novelty and concreteness. But I think the novelty and concreteness are really important, because there was not any concreteness to what was passed on. It was just, you know, acquire ITT Sheraton and spin off the gaming companies. To me, Las Vegas Industries. I have about two minutes left, if you have any more questions. Otherwise, I think I have exhausted your patience in the argument. Thank you very much. Thank you very much, Your Honor. As far as the legal issue in this case about whether novelty is a requirement, I would like to refer the Court to Nimiron Copyrights, which, indeed, is cited by Recreon, and that's 9-16, Section 1608. And that's the definitive treatise, and I think is very helpful about all the pitfalls in this area. And one of those pitfalls that I'd like to warn the Court about is the idea of did Starwood use Kammerer's idea? Stepping back and say, okay, this is an idea case. Ideas are intangible. It's not a package. It's not something concrete. It's not something that you can pick up and put in a box and mail. You know, ideas come from people who are creative, and, you know, in some way, they're the antithesis of, you know, the straight-laced, you know, CEO, people who think linearly. I mean, ideas need to be, you know, encouraged, and ideas are just that. Sometimes a wild idea. So was this idea used? How can you figure out whether an idea was used or not when it necessarily becomes in this straight-laced, packaged, you know, thousand-documented, you know, page transaction? The only thing you can do is look and see if there's some kind of similarity between the in-concrete, different, out-of-the-box idea and the ultimate transaction. And it is at least... Why isn't it relevant to that consideration whether the person had the idea ahead of time? I'm sorry? Why isn't it relevant that the person already had the idea? Let's assume that they had the same idea. Let's take out the disputes about whether it was the same idea or a different idea. Let's say it was the same idea. Well, then I guess it would be, you know, a question of fact whether you used your own idea or you used someone else's idea, but it was the same idea. So you could say you used yours. And that, indeed, is something that you need to watch out for. NMRA explains that novelty and use of the idea are related. And, indeed, the courts that require novelty say that a proof of novelty is whether, indeed, the idea was used. So you've got to be careful going down that way. But the big picture is there is a similarity, substantial similarity, or at least a question of fact about whether the idea NMRA proposed and what eventually complicated transaction that occurred were similar, i.e., used. Okay? So if you don't want to go to novelty and you want to focus on used, it is a question of fact. It's not an escape from the novelty question of fact that exists on this record. Okay. Quickly on the evidence. Again, there's nothing, no papers, nothing written, that certainly had this idea prior to the meeting with Kemmerer. Nothing on paper. It was also never presented. Sternlich never told anybody prior to this very motion in this litigation that the idea was not new. It was never brought up. He never told Kemmerer, which would be like your normal reaction. Well, I already thought of that. I've already ---- Excuse me. Was the 79-minute telephone conversation discussed during depositions? The 79-minute conversation, with Bowman's testimony and the numbers, it was between Ann Rice and Madison Gross, and Bowman testified that that was about just finding out what a REIT was, which was what Starwood had. It made Starwood unique. And Bowman testified that when Sternlich called him and talked generally, that he says, I'm a REIT, and Bowman never knew what a REIT was, so he told somebody to go find out what that was. But that was not a conversation between Sternlich and Bowman. But it was a conversation that suggested there was some reason they wanted to know this. It suggested, I'm sorry? There was a reason they wanted to know this. There was a reason why, perhaps a combination of the companies. But, again, every hotel industry at the time was looking at, okay, this company's, you know, there's something going on, okay? But the idea of acquiring the minnow, acquiring the whale, which is eventually what it turned out to be, and that, again, is what got acquisition of the year. That's what made the front page of Fortune magazine. That was the substantially similar idea, and novel and valuable, however you want to describe it, idea that was Kimmerer's. Thank you very much. Thank you. Thank you. Thank you, counsel. The case of Kimmerer v. Starboard Hotels is submitted.
judges: B .Fletcher, Berzon, Houston